IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JERRY BROWN,  )
 )
        Plaintiff, )
 )
  v. ) No. 05 C 2460
 )
ILLINOIS DEPARTMENT OF )
NATURAL RESOURCES, )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Jerry Brown ("Brown") has brought a pro se action against the Illinois Department of Natural Resources ("Department"), charging Department with two violations of Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§2000e to 2000e-17): (1) employment discrimination on the basis of race and national origin and (2) retaliation. Both charges are premised on Department's failure to promote Brown and to grant him what he would consider adequate salary increases.

Department has now brought a motion for summary judgment under Fed. R. Civ. P.("Rule") 56, and the motion has been fully briefed. For the reasons stated here, that motion is granted.

### Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider evidentiary records in the light most favorable to nonmovants and draw all reasonable inferences in their favor

(Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts viewed on the terms stated in the preceding paragraph. That pro-Brown perspective may of course be impacted by the extent of his compliance (or noncompliance) with the strictures of this District Court's LR 56.1.[1]

**Background**

Department is a state agency that manages, protects and sustains the natural and cultural resources of Illinois, provides resource-compatible recreational opportunities and promotes natural resource related public safety, education and science (D.

---

[1] LR 56.1 implements Rule 56 by requiring each party to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are agreed upon. This opinion identifies Brown's and Department's respective submissions as "B." and "D.," followed by appropriate designations: LR 56.1 statements as "St. ¶--," responsive statements as "Resp. St. ¶--," exhibits as "Ex.--" and memoranda as "Mem.--" and "R. Mem.--" (the latter designating Department's Reply Memorandum).

St. ¶8). Office of Scientific Research and Analysis, a division within Department, comprised four surveys (D. St. ¶9), one of which was Waste Management and Research Center ("Center")[2] (id.). Those surveys were governed by an eight-member Board of Natural Resources and Conservation ("Board"), chaired by Department's Director, George Vander Velde (id. and D. St. ¶6), who made salary recommendations to the Board for its approval (D. St. ¶28).

Brown was hired by Center in 1994 as a Manufacturing Process Engineer with the payroll title of Assistant Professional Scientist (D. St. ¶5). On January 14, 2003 then Illinois Governor Rod Blagojevich issued this executive order instituting an immediate hiring and promotion freeze for state employment ("Governor's freeze")(D. Ex. D1):

> I, Rod R. Blagojevich, Governor of Illinois, order that no agency, department, bureau, board or commission subject to the control or direction of the Governor shall hire any employee or officer, fill any vacancy, create any new action which result in the increase or the maintenance of present levels in State employment or compensation (including benefits) payable in connection with State employment, including personal service contracts. All hiring and promotion are frozen. There will be no exceptions to this Executive Order without the express written permission of my office after submission of appropriate requests to my office.

During the Governor's freeze of State-funded hiring and

---

[2] Effective July 1, 2008 the surveys were transferred to the University of Illinois, and Center was renamed Illinois Sustainable Technology Center (D. St. ¶ 10).

3

promotions, Center was permitted to hire five contract-funded employees using external grants and contract funds (D. St. ¶19). Such funds are administered through the University of Illinois ("University"), and the Board authorizes the University to accept grant and contract funds in support of Center's work (D. St. ¶20). Because contract-funded positions do not use budgeted State funds, they do not require State approval (D. St. ¶21).

Because of a large number of staff resignations (reportedly due to the lack of salary increases in 2003 and 2004) and the need to retain existing staff, the Board approved a 3% salary increase for all Center employees in September 2005 (D. St. ¶¶34, 35, 39). Then after the Governor's freeze was lifted, in December 2005 Center also granted 5% salary increases to seven employees (including Brown) who had become eligible for them (D. St. ¶40). At that time Brown was promoted to the Associate Professional Scientist payroll level (D. St. ¶¶32, 48). No Center employee received a promotion increase during the period that the Governor's freeze was in effect (D. St. ¶51).

In 2002 Brown brought an action under Title VII against Department in this District Court (Case No. 02 C 398), charging that he was (1) discriminated against based on his race (Brown is African American) and (2) retaliated against for complaining about the discrimination. Brown contended that Department had failed to promote him to the position of Associate Professional

4

Scientist despite his eligibility under time-in requirements during years beginning in 1998 and continuing thereafter (ultimately through 2003). Brown also asserted that after he had complained about his being denied a promotion and had filed two charges with the Equal Opportunity Employment Commission, Center retaliated by giving him a negative performance review in 2000, placing him on probation in 2000 and continuing to pass him over for promotion in 2001, 2002 and 2003.

That lawsuit ended unsuccessfully for Brown. This Court's colleague Honorable John Nordberg granted Department's motion for summary judgment in Case No. 02 C 398, holding that Brown had failed to establish a prima facie case of discrimination because he did not identify any similarly situated individuals of a different race who were treated more favorably and because there was no evidence that Center's stated reason for not promoting Brown--his negative performance reviews and client complaints about him--was a pretext for race discrimination. Brown's retaliation claim was also rejected by Judge Nordberg because of the absence of any direct evidence of a retaliatory motive. Our Court of Appeals affirmed that decision in Brown v. Ill. Dep't of Natural Res., 499 F.3d 675 (7th Cir. 2007).

On October 15, 2004 Brown filed a new charge with the EEOC, and on January 25, 2005 that agency issued a right-to-sue letter (D. Ex. A) that enabled him to file this lawsuit. Brown's

5

Complaint contends that Department's continued failure to grant him a promotion or salary increase constitutes discrimination and retaliation in violation of Title VII.

**Time Limitations on Brown's Claims**

This Court has repeatedly warned Brown that the outcome of his earlier case, coupled with the principle established by Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.Ct. 2162 (2007), limits in large part the factual context within which this Court may consider his present claims. Ledbetter, 127 S.Ct. at 2166-72 teaches that a Title VII plaintiff must identify a discrete act of discrimination that falls within the requisite statute of limitations period, rather than asserting the continuing effects of an employer's past (and assertedly discriminatory) decisions. Accordingly our Court of Appeals explained in Brown's earlier lawsuit that "Brown is time-barred from filing suit under Title VII for any 'discrete act' about which he did not file an EEOC charge within the 300 day EEOC charging deadline" (499 F.3d at 681).[3]

Because Brown's EEOC charge on which he pegs this case was filed on October 15, 2004, he must rely solely on any discriminatory acts committed on or after December 20, 2004.

---

[3] Title VII requires a claimant to file an Illinois-based charge with the EEOC within 300 days of the alleged act of discrimination (42 U.S.C. §2000e-5(e); Doe v. Oberweis Dairy, 456 F.3d 704, 708 (7th Cir. 2006)).

Despite Brown's persistence in referring to actions (or inaction) by Center before that date,[4] this opinion will treat as potentially actionable only any post-December 19, 2004 conduct by Department.

**Race Discrimination Claim**

In part Brown claims that Department discriminated against him because of his race by failing to promote him from 2003 until December 2005 and by not giving him a sufficient salary increase when his 2005 promotion was eventually granted. Because Brown concedes he has no direct evidence of race discrimination, he must proceed under the now familiar indirect burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (D. Mem. 6). For that purpose a prima facie case of race discrimination requires a showing[5] that (1) Brown is a member of

---

[4] This is hardly the first time this Court has had to deal with Brown's repeated defiance of the effect of his earlier lawsuit and the applicable statute of limitations. This Court's November 5, 2008 order identified Brown's persistent references to and reliance on matters that were time-barred under Ledbetter and by the preclusive effect of his prior suit. That caused Brown to file a revised response to Department's summary judgment motion. But even then he could not refrain from referring to out-of-bounds conduct, stating that "[a]lthough the 2002 and 2003 discrete acts are not actionable, Plaintiff will cite them as evidence of Defendant's discriminatory practices against Plaintiff" (B. Mem. 7).

[5] In the summary judgment context, of course, Brown's burden is only one of demonstrating the existence of genuine issues of material fact, not one of proof as such (see Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994)). But any continued repetition of that burden involves an awkward locution, an awkwardness contributed to by the fact that so much

7

a protected group, (2) he was qualified for the position, (3) he suffered an adverse employment action and (4) a similarly situated employee not of the protected class was treated more favorably (Gusewelle v. City of Wood River, 374 F.3d 569, 574 (7th Cir. 2004)). If Brown does that, "the burden shifts to the defendant-employer to articulate a legitimate nondiscriminatory reason for the adverse employment action" (id.). And if the employer meets that burden, Brown must show that the employer's proffered reasons are pretextual (id.).

Brown contends that he was denied a promotion to the position of Associate Professional Scientist or Professional Scientist in or around September 2004 and received an inadequate salary increase in 2005. Department responds that Brown cannot establish a prima facie case of discrimination because he cannot show that any similarly situated individual of another race received more favorable treatment. Although Brown acknowledges that no other Center employee received a raise during the Governor's freeze, he attempts to rely on evidence that Department employees in other surveys received salary increases or were hired during that time (B. Mem. 11-12).

As Department points out, however, whether another

---

of the caselaw speaks of what a party responding to a Rule 56 motion must "establish" or "prove" or "show." Whenever this opinion employs such terms, it should therefore be understood as denoting only Brown's lesser burden described in this footnote, not the actual burden of persuasion.

8

individual is "similarly situated" for purposes of proving discrimination requires a plaintiff's showing that the other employee "is someone who is directly comparable to [him] in all material respects" (<u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676, 680 (7th Cir. 2002), adapted to Brown in terms of gender). To that end <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617-18 (7th Cir. 2000)(citations omitted) explains:

> In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case. For example, in disciplinary cases--in which a plaintiff claims that he as disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason--a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

<u>Humphries v. CBOCS West, Inc.</u>, 474 F.3d 387, 405 (7th Cir. 2007) cautions that though the <u>Radue</u> explanation encompasses the norm, "[i]t is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees." Nevertheless there must be "sufficient commonalities on the key variables between the plaintiff and the would-be comparator that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination" (<u>id</u>.).

Brown identifies various individuals that he contends were similarly situated to himself and were treated more favorably

9

than he was.  First, Brown argues that in 2004 Center hired employees while the Governor's freeze against hiring and promotion was in effect (B. Mem. 11).  Department acknowledges that Center was permitted to hire five employees during that time, but it contends that those employees were not "similarly situated" to Brown because they were hired and paid on grant and contract funds, rather than budgeted State funds as was the case with Brown (D. Mem. at 9).  As indicated earlier, contract funded positions do not require State approval and are not considered in determining headcount maxima (id.).

While those distinctions are well taken, what is even more damaging to Brown's attempt to state a prima facie case is the fact that none of those employees was promoted or given a salary increase during the remainder of the Governor's freeze--the time window within which Brown's claim of discrimination is cabined.  That being so, those employees cannot be found to have been treated more favorably than Brown for purposes of his failure-to-promote claim.

Brown next points to employees of the Natural History Survey, another survey within Department, who were promoted during the Governor's freeze.  Although Brown views it as irrelevant that they were not Center employees, the law is otherwise.  Employees of the Natural History Survey were members of a different division and were under the management of a

10

different supervisor than Center employees such as Brown. Brown himself acknowledges that the power to petition the Board for salary increases during the Governor's freeze rested with the director of each survey (B. Resp. St. ¶27). But as Radue, 291 F.3d at 618 explains, "[d]ifferent employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." For precisely those reasons, the employees of the Natural History Survey are not similarly situated to Brown.

Next on Brown's list of individuals whom he characterizes as similarly situated is Damon Stotts, a Department employee who received a 5% salary increase in 2004. According to the Board minutes Brown cites in support of his argument, Stotts was the Chief of Operations of the Office of Scientific Research and Analysis and received the salary increase "as a result of increased duties and responsibilities" (B. Ex. 3). Clearly Stotts' employment position within Department was much higher than Brown's. Indeed, Stotts held a supervisory role in the division that oversaw Center and the other three surveys under its management. For purposes of evaluating a Title VII plaintiff's prima facie case, employees who do not hold equivalent positions (in this case far from equivalent) are not

11

similarly situated (<u>Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.</u>, 254 F.3d 644, 651 (7th Cir. 2001)).

Finally, although Brown acknowledges that he received salary increases in September and December of 2005, he argues that two other Center employees, John Scott and Riyaz Shipchandler, received "special salary adjustments" at that time rather than salary increases. Those adjustments, Brown contends, allowed the employees to remain eligible for another salary increase without having to satisfy certain timing requirements, thereby allowing Scott and Shipchandler to receive larger increases to their salaries than Brown.

In response Department says that neither Scott nor Shipchandler is similarly situated to Brown because the reasons for their respective salary adjustments did not apply to Brown. According to a memo written by Center regarding the 2005 increases, Scott (a chemist) began cross-training on very complex instruments and assumed the duties of a higher-level chemist who had departed Center's employment (D. Ex. E at 12). Accordingly his salary was increased "to compensate him for the additional responsibilities he will be carrying and the new much-needed skills he has acquired" (<u>id</u>.). Shipchandler's salary increase was granted because he had recently obtained a Master's degree in an area of particular value to Center, was in the process of getting his Professional Engineer certification and had assumed

12

more responsibility than Center had envisioned for his position.

Brown does not offer any analogous changes to his job responsibilities or qualifications that would merit the type of special salary adjustments received by Scott and Shipchandler. Instead he maintains that his co-workers attested to his hard work ethic and strong job performance and that his supervisor believed he deserved a higher salary. This Court does not of course discount those accolades, nor would it expect Department to do so either--after all, it did award Brown a salary increase in 2005. But the fact that Brown was entitled to a salary increase for his job performance does not mean that he was similarly situated to other employees who received salary adjustments for expanded job duties and educational qualifications (see Patterson, 281 F.3d at 680; Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 274 (7th Cir. 2004)).

One final comment is in order. Underlying Brown's arguments is the notion that because he did not receive salary increases in the years before 2003, Department's later decision not to grant him promotion and salary increases greater than those who were not similarly denied raises in past years was discriminatory. Even aside from the inappropriateness under Ledbetter of relying on conduct that is untimely for this lawsuit's purposes, Brown's argument fails to establish actionable discrimination even on its merits. Brown recognizes that the salary increases awarded to

13

Center employees in 2005 were uniform, but he nevertheless urges that "this 'everyone gets the same' treatment was actually a detriment to Plaintiff" (B. Mem. 17). In essence Brown asserts he was discriminated against because he was not currently treated more favorably than his co-workers--a claim that finds no support in the law.

Not having identified any similarly situated individual who received more favorable treatment within the bounds of this action, Brown has failed to raise a genuine issue of material fact as to his prima facie case of race discrimination under Title VII. Though that is itself dispositive, it is worth looking at the rest of the McDonnell Douglas analysis, for it actually drives an added nail into the legal coffin that inters Brown's claim. In brief, Department has clearly offered legitimate nondiscriminatory reasons for its employment actions as to Brown, while Brown has not in return shown that those reasons are pretextual.

To demonstrate pretext "a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation" (Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998)). In the absence of direct evidence of pretext, the plaintiff must prove pretext indirectly by showing "that the employer's reason is not credible or that the reason is factually baseless" (Perez v.

14

Illinois, 488 F.3d 773, 777 (7th Cir. 2007)) and "must also provide evidence of at least an inference that the real reason for the adverse employment action was discriminatory" (id. at 778 (internal quotation marks and brackets omitted)).

Here Department explains that Brown's failure to receive a raise in 2004 was due to the Governor's freeze on promotions and salary increases in effect at that time. Though Brown does not (and cannot) contest the existence of the Governor's freeze, he argues that Center and Department could have lobbied for a salary increase on his behalf anyway. But given the legitimate directive and the fact that no other Center employee was granted a salary increase at that time, Department's justification for its action simply cannot be said to have been dishonest or factually baseless.

As for the salary increases that Brown did receive in 2005, Department has presented evidence that Center has followed a uniform practice of granting promotion increases at 5% since the late 1990s (D. Ex. D1). Although Brown may have felt himself deserving of a higher increase, that does not discount the legitimacy of Department's justification for purposes of a pretext analysis (Cardoso v. Robert Bosch Corp., 427 F.3d 429, 435 (7th Cir. 2005)). And as long as that decision was nondiscriminatory, as this Court finds, it is not the place of judges to second-guess the business judgment of employers such as

15

Department (id. at 435-46; Guerrero v. Ashcroft, 253 F.3d 309, 314 (7th Cir. 2001)).

Thus Brown faces not one but two insurmountable hurdles: his inability to establish a prima facie case of discrimination and his failure to demonstrate pretext in any event.  In sum, Department's motion for summary judgment on Brown's race discrimination claim must be and is granted.

**Retaliation Claim**

As for Brown's retaliation claim, he contends that his failure to receive a salary or promotional increase in 2004 and his inadequate salary increase in 2005 were the result of his previously filed lawsuit against Department.  As with discrimination, Title VII retaliation may be proved either directly or indirectly (Humphries, 474 F.3d at 404).  Once again Brown seeks to advance his claim through the indirect method of proof.

Under that method Brown "must show that after opposing the employer's discriminatory practice only he, and not any similarly situated employee who did not complain of discrimination, was subjected to a materially adverse action even though he was performing his job in a satisfactory manner" (id.).  Again if Brown establishes a prima facie case, the burden then shifts to Department to present a non-discriminatory reason for its employment action (Tomanovich v. City of Indianapolis, 457 F.3d

656, 663 (7th Cir. 2006)). And once more if Department carries that burden, Brown is then charged with the burden of proving that Department's stated reason is pretextual.

Brown's attempt to establish a prima facie case of retaliation fails for the same reasons as his discrimination claim. Brown has identified no similarly situated employee who was treated more favorably (or, put differently, Brown was not subjected to a materially adverse action not suffered by comparable employees) during the time at issue in this litigation. Without that essential element Brown cannot establish a prima facie case of retaliation.

Any potential retaliation claim that could survive the prima facie case standard (as Brown's has not) would fail on the issue of pretext as well. Because the analysis on that score is precisely the same as explained in the preceding section of this opinion, it does not need repetition here. Hence Department's motion for summary judgment on Brown's retaliation claim is also granted.

## Conclusion

With no genuine issue of material fact being present, Department is entitled to a judgment as a matter of law on all of Brown's claims. Its Rule 56 motion is therefore granted, and

17

this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date:  February 9, 2009